UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK                                    **NOT FOR PUBLICATION**
-----------------------------------------------------------------
In re

       Will Foods, LLC                                                          Case No. 17-10754 MJK

               Alleged Debtor
-----------------------------------------------------------------

Raymond L. Fink, Esq.
Lippes Mathias Wexler Friedman, LLP
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202-2293

ATTORNEY FOR ALLEGED DEBTOR

Michael A. Weishaar, Esq.
Gleichenhaus, Marchese & Weishaar, P.C.
930 Convention Tower
43 Court Street
Buffalo, NY 14202

ATTORNEY FOR PETITIONING CREDITOR

DECISION AND ORDER

Early this year Will Foods, LLC ("Will") publicly announced that it was closing its doors. Once it did so (apparently in March, 2017) its lender M&T Bank ("M&T") proceeded to liquidate its collateral. On April 14, 2017, an involuntary petition against Will was filed by one creditor only, Amick Farms, LLC ("Amick"). On May 5, 2017, Will filed its answer to the involuntary petition asking that the involuntary petition be dismissed because Will had more than twelve creditors and, consequently, an involuntary petition signed by only one creditor could not effectively commence the case.

Pursuant to Rule 1003(b), FRBP,[1] the Court entered an Order on May 8 which read as

---

[1] That rule reads as follows: "If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in §303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon."

follows: "Pursuant to FRBP Rule 1003(b), Will Foods, LLC having filed an Answer in which it states through its attorneys that it has more than twelve creditors, and it appearing to the Court that this might be the case, it is hereby Ordered, that the attorney for Petitioner Amick Farms, LLC has until May 15, 2017 to obtain at least two more creditors to join in the petition unless counsel represents in writing that there are less than twelve creditors as of the petition date. " On May 15, Amick's attorney filed an *ex parte* motion asking the Court to grant leave for Sahlen Packing Company, Inc. ("Sahlen"), Fry Foods, Inc. ("Fry") and GariMark Foods, Inc. ("GariMark") to join in as petitioning creditors in the involuntary petition filed against Will Foods, LLC. The Court denied that *ex parte* motion on May 16, and issued a scheduling order under Rule 1013(a), FRBP setting a hearing on Will's request for dismissal to be held on May 26, 2017. Also on that date, Amick's counsel filed an Amended Involuntary Petition signed by the four creditors, Amick, Sahlen, Fry and GariMark. Further submissions were filed and on May 26, at oral argument, the Court granted Amick an opportunity to provide a supplemental brief, due June 5, which brief was in fact filed on that date. A sur-reply on behalf of the Alleged Debtor was filed on June 13.

In Amick's submissions, including an affidavit by an officer or director of Amick, various assertions were made "upon information and belief" that suggested to the Court matters of substantial moment could rest upon the question of interpretation of the Court's May 8 order granting time to Amick to obtain the signatures of other creditors. Specifically, it has been alleged that M&T Bank may have perfected certain of its security interests in a manner avoidable under 11 U.S.C. §547, an allegation which, if true, could place the proceeds of M&T's liquidation efforts beyond the reach of Will's unsecured creditors if the involuntary case were to be dismissed, even with leave to re-file - - the 90-day preference period will have long-expired by the time a new involuntary petition would be filed, signed by three creditors instead of one. Additionally, it was

asserted by Amick (which claims that it is owed nearly a quarter million dollars) that it had been shipping perishable product to Will even after Will stopped paying Amick's invoices, and that the product was being auctioned-off for the benefit of M&T.

On the other hand, counsel for M&T assured the Court, in open court, that M&T stopped all collection efforts when the involuntary petition was filed, and would not undertake any further collection efforts pending the outcome of this dispute. Because of that assurance, and the fact that the Alleged Debtor is not operating, the Court was of the view that the command of Rule 1013(a)[2] was not pressing.[3]

Consequently, (and because this writer was out of town from June 6 through June 13), it was not until June 29 that the Court ordered that an evidentiary hearing would be held on July 13, to permit Will to examine Amick's representative under oath as to the question of whether Amick's decision to seek entry of an involuntary Order for Relief was grounded in "good faith."

There were some scheduling changes discussed in light of the fact that Amick's representative lives in South Carolina, and so travel arrangements, etc., had to be arranged. Finally, on July 10, Will withdrew its suggestion that Amick did not act with "good faith by initially filing the subject involuntary petition, without any additional creditors," thus negating the need for the evidentiary hearing on "good faith."

The Court deems this process to have resulted in this question to be answered by the Court: Were the necessary additional creditors added to the involuntary petition under Rule

---

[2] That rule reads as follows: "The court shall determine the issues of a contested petition at the earliest practical time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order."

[3] Part of the reason for the urgency imposed by the rule recognizes the injury to an alleged debtor's reputation if an involuntary petition that should be dismissed is not dismissed quickly, and another aspect is the treatment of "involuntary gap" creditors under various provisions of the Code. Neither of those concerns is applicable as to an entity that has closed its doors.

1003(b) in a sufficient manner, and a timely matter, such that Will's request to dismiss the involuntary petition should or must be denied?

The Court has not been cited to any authorities regarding this particular question. Rather, it has been cited only to the case of *Lubow Machine Co., Inc. et al. v. Bayshore Wire Products Corp.(In re Bayshore Wire Products Corp.),* 209 F.3d 100 (2d Cir. 2000) which dealt with 11 U.S.C. §303(i)(2) under which damages may be awarded for the filing of an involuntary petition "in bad faith." Moreover, the Court did not research the question of how best to implement Rule 1003(b) at the time it entered its May 8 order granting a few more days to find two more creditors. Indeed, the Court suspected that Will would either consent to the entry for an order for relief, or default, and let an Order for Relief be entered. It was not until the oral argument that the Court learned that there was an issue as to the potentially-preferential filing of M&T UCC notices, and also (importantly) that there no longer were any officers, directors, or employees of Will who could comply with the statutory obligations and Rules obligations to provide lists, schedules, statements, etc. (as so represented by its counsel).

## CONCLUSION

There are a number of factors that lead this Court to the conclusion that this involuntary petition must continue to the entry of an Order for Relief against Will Foods, LLC. Those factors do not stand alone.

First, it is being liquidated in a fashion that possibly advantages M&T at the expense of unsecured creditors such as Amick.

Second, case law makes it clear that the requirements of §303 that there be three or more creditors filing an involuntary petition if the alleged debtor has more than twelve creditors, is not

jurisdictional.  See *Adams v. Zarnel (In re Zarnel),* 619 F.3d 156 (2d Cir. 2010).  Indeed, there would be no need for Rule 1003(b) if it were jurisdictional.

Third, Rule 1003(b) leaves the "reasonable opportunity for other creditors to join in the petition" to the sole discretion of the Bankruptcy Court.  It does not prescribe the duration of the "opportunity" nor does it prescribe the procedure by which other creditors may "join" in the petition.  The Advisory Committee note to that Rule states "Section 303(c) of the Code permits a creditor to join in the petition at any time before the case is dismissed or relief is ordered.  While this rule does not require the court to give all creditors notice of the petition, the list of creditors filed by the debtor affords a petitioner the information needed to enable him to give notice for the purpose of obtaining the co-petitioners required to make the petition sufficient.  After a reasonable opportunity has been afforded other creditors to join in an involuntary petition, the hearing on the petition should be held without further delay."

Fourth, there does not appear to be any clear, unequivocal guidance as to what the method of "joining" the involuntary petition should be.  This writer has never ruled on that question, nor (to the best of this writer's knowledge) has the Western District of New York or the Second Circuit Court of Appeals.  In the days before implementation of CM-ECF, this writer presumed that an effective method would be to tender a supplemental petition page on which at least two other creditors had signed. Since implementation of CM-ECF in this District in 2003, much has been left to representations made by an attorney.  For example, under the Administrative Procedures adopted throughout the nation for CM-ECF filers, an attorney's e-filing of a voluntary petition is a representation by the attorney that he or she has in his or her possession the client's signature on the petition page; that is represented by the "/s/" on the signature line for a debtor in the PDF version of the petition e-filed by the attorney.  Collier on Bankruptcy apparently addresses this

matter only obliquely, by offering a form by which one makes a motion to join in an involuntary petition. In this Case, counsel for Amick e-filed an *ex parte* motion to permit the joinder of additional creditors. That motion implied that he had obtained new clients for the purpose of filing the involuntary petition.

Fifth, there was appropriate follow-up by which joinder was attempted in various ways. This is to say that there was no sleight of hand in counsel's representations that the necessary additional creditors had "come on board," so to speak.

Finally, Will has chosen not to contest the "good faith" of Amick in believing that it could commence this involuntary case on its own.

For the totality of those reasons, the Court concludes that the last minute effort by counsel for Amick to comply with the Court's May 8, 2017 Order sufficed to preserve the opportunity to obtain the necessary joinder, and that proper joinder has been achieved.

The request to dismiss the involuntary petition is denied. A separate Order for Relief under Chapter 7 will be entered contemporaneously herewith.

SO ORDERED.

Dated:  Buffalo, New York
            July 19, 2017

                                                                          s/Michael J. Kaplan
                                                                                U.S.B.J.